## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LINDA D. HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-2287-JAR-KGG |
| | ) | |
| AIH RECEIVABLE MANAGEMENT | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT & RECOMMENDATION AND
## MEMORANDUM AND ORDER

Before the Court is Plaintiff's "Motion for a Finding of Spoliation and for Sanctions" (Doc. 121), in which Plaintiff argues that Defendant spoliated evidence that was "necessary for a fair and just trial" and violated prior discovery Orders from this Court.  Defendant responds that "no relevant MS Word documents were destroyed after [its] preservation obligations were initiated" and that neither it nor its attorneys "have 'intentionally destroyed or hidden any ESI." (Doc. 128.)  For the reasons set forth below, Plaintiff's motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

1

Plaintiff Linda D. Hudson instituted the present action against her former employer AIH Receivable Management Services ("AIH" or "Defendant"), bringing claims for racial discrimination harassment, hostile work environment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, the Kansas Act Against Discrimination, and 42 U.S.C. 1981; for age discrimination and harassment pursuant to the Age Discrimination in Employment Act and the KAAD; sexual harassment and hostile work environment in violation fo Title VII and the KAAD; and whistle-blower retaliation.  The District Court recently granted summary judgment in regard to Plaintiff's claim under Title VII, her claim for age discrimination under the ADEA and KAAD, her claim for sexually hostile work environment under the KAAD, her claim for retaliation under §1981 and the KAAD that is not based on her termination, and her claim for whistleblower retaliation under Kansas law.  Plaintiff's claims that remain pending are those for racially hostile work environment under §1981 and the KAAD as well as her claim of retaliation based on her termination under §1981 and the KAAD.  (*See generally*, Doc. 133.)

In ruling on summary judgment, the District Court summarized the relevant, uncontroverted facts of the case.  (*Id.*, at 5-15.)  That summary is incorporated herein by reference.  For purposes of this motion, the Court notes the following

additional relevant facts.

**A.      Notice to Defendant of Document Retention**.

Plaintiff filed her KHRC/EEOC charge of discrimination on March 9, 2009.
(Doc. 1-1.)  This was approximately one month after Defendant terminated her
employment.  (*See* Doc. 133, at 15.)  Enclosed with her charge, Defendant received
an information sheet from the EEOC detailing its duties of nonretaliation and to
maintain documentation relating to Plaintiff's allegations.  (*See*, *id.*)  Defendant
also received correspondence from the KHRC on that date informing it of its duties
under K.S.A. 44-1013, prohibiting the "destruction of records or other acts, which
would prevent, impede, or interfere with investigation of this complaint . . . ."
(Doc. 128-19.)  Plaintiff contends that despite Defendant's knowledge of her
claims, it "refused to issue a litigation hold or take any affirmative steps to
preserve evidence in its possession or under its control" at the time.  (Doc. 122, at
1-2.)

Plaintiff's lawsuit was filed on May 19, 2010.  (Doc. 1.)  On September 13,
2010, the Court entered its Initial Order Regarding Planning and Scheduling.
(Doc. 18.)  That Order specifically instructs the parties that

> [i]n developing their case management plan, counsel
> should keep in mind that electronically stored
> information (ESI) was the subject of very significant
> amendments to Fed. R. Civ. P. 16, 26, 33, 34, 37, and 45

that went into effect on December 1, 2006. Therefore, prior to the Rule 26(f) planning conference, counsel should familiarize themselves with those amendments and review the ESI guidelines that are posted on this court's Internet website:

(*http://www.ksd.uscourts.gov/guidelines/electronicdiscoveryguidelines.pdf*)

As this court's ESI guidelines make clear, prior to the Rule 26(f) conference, counsel also should become knowledgeable about their clients' information management systems and their operation, including how the information is stored and retrieved.

(*Id.*, at 1-2.)

The Court entered its Scheduling Order on October 19, 2010, which

included the following instructions regarding ESI:

Consistent with the parties' agreements as set forth in the planning conference report submitted pursuant to Fed. R. Civ. P. 26(f), electronically stored information (ESI) in this case will be handled as follows:  The parties have not reached an agreement concerning Electronically Stored Information (ESI), although the court is informed that both parties have concerns about the preservation and production of ESI.  The parties are ordered to exchange ESI Disclosure Statements on or before November 8, 2010.  These statements shall not be filed with the court. Each party, in its disclosure statement, shall explain how and where e-mail data and internet browsing data are created and stored on that party's computer systems or networks, and shall explain the protocol or standard procedure for archiving, destroying or deleting such data. Following the exchange of ESI Disclosure Statements, the parties will confer in an attempt to agree to an order to be entered in this case which addresses preserving such data.  If an agreement cannot be reached, the matter should be presented to the court for resolution.  Until an

4

> order is filed by the court, each party is ordered to
> preserve all data of any description on its systems,
> networks or on any storage device which constitute the
> actual copies or any record of e-mails or browsing history
> data.

(Doc. 21, at 3-4.)  Plaintiff contends that "it was not until late October or

November 2010 that [Defendant] even considered the preservation of evidence

relevant to [Plaintiff's] case."  (Doc. 122, at 2.)

**B.      Destruction of ESI by Defendant's Employee**.

Throughout this time, Defendant's employee Travis Joyce, the individual at

the heart of Plaintiff's claims of discrimination and harassment, continued to empty

his work e-mail inbox on a daily basis – even after the litigation hold was put in

place.  Defendant admits that in March 2011, shortly before Joyce's deposition,

counsel discovered that Joyce allegedly "misunderstood the requirements of the

litigation hold."  (Doc. 128, at 15.)  Up until this conversation, Joyce continued the

"routine document destruction" of his e-mail that he began at the commencement

of his employment for Defendant; he "would delete every e-mail in his in box

every day, except for one periodic e-mail regarding collection statistics."  (*Id*., at

15-16.)

Joyce informed defense counsel that "he believed that the litigation hold

only required the preservation of e-mails relating to [Plaintiff] and her lawsuit."

(*Id*., at 15.)  Even so, he testified that he "neither received nor erased any e-mails"

regarding Plaintiff or facts relevant to her lawsuit.  (*Id*., at 16; *see also* Doc. 128-

14, at 30-31.)  Further, Joyce did not delete any e-mails from his e-mail "sent box."

(*Id*.)  Thus, all e-mail he *sent* was retained and produced to Plaintiff.  Also, all e-

mail Joyce received from Defendant's other managers was maintained in the e-mail

sent folders of those other managers as they are all alleged to have complied with

the litigation hold.  (*Id*., at 16.)

**C.      Plaintiff's Prior Motion to Compel**.

          Plaintiff previously filed a Motion to Compel in this matter, in part arguing

that Defendant refused to produce electronically stored information (ESI).  (Doc.

48.)  A hearing on the motion occurred on April 5, 2011, and was followed by a

written Order, granting the motion in part, on April 13, 2011.  (Doc. 100.)  By the

time of the hearing, the only category of ESI remaining at issue was Defendant's e-

mail.  (*Id*., at 4.)

          In addressing the issue of balancing the costs of producing ESI (*id*., at 2-4),

the Court acknowledged that Defendant's e-mail is

                    stored in two formats. One is a common format which
                    can be reviewed with an email program to which Plaintiff
                    has access. The other format is a data storage format
                    which will require the purchase of additional software to
                    review. Defendant may produce unedited, unreviewed,
                    and unredacted data files of all data in its possession,

together with the name of the software needed to read the storage data. Plaintiff may then purchase the software and conduct her own searches. The Court understands that this data may contain unrequested and privileged e-mails, so this option may not be practical. If Defendant wishes to review the data to produce only responsive and unprivileged e-mails, Defendant will bear the cost of the search and the needed software.

> . . .

The court will order discovery of e-mail ESI limited to specific topics. The parties are ordered to confer further to agree to search term strategies designed to efficiently identify documents with the applicable software.

In regard to non-e-mail (and calendar) documents, the parties have agreed that the issue concerns Plaintiff's request to examine the native (ESI) versions of documents which have been (or will be) produced in hard copy. The parties have agreed that Plaintiff will identify each such document to Defendant, who will produce any native ESI version of the document in its possession.

(*Id.*, at 5.)

The Court further ordered Defendant

to conduct an ESI search of active and stored e-mails (from 2005 to the present) for the following:

1.     E-mail to or from Plaintiff or that identify her by name;
2.     E-mail to or from employee Travis Joyce or that identify him by name; and
3.     E-mail to or from the three persons named in the request concerning the criminal investigation, charge or case which is the subject of Plaintiff's retaliation claim.

7

> Should Defendant believe that any of the documents
> found pursuant to the search are subject to a claim of
> privilege, Defendant is required to produce a compliant
> and timely privilege log.

(*Id.*, at 10.)  Thus, the Court gave the parties parameters within which to work

regarding ESI and specifically instructed them to "confer further to agree to search

term strategies designed to efficiently identify documents with the applicable

software."  (*Id.*, at 5.)

## DISCUSSION

Although titled "Motion for a Finding of Spoliation and for Sanctions," a

reading of Plaintiff's supporting memorandum raises two distinct issues:  1)

whether Plaintiff is entitled to an inference that Defendant "destroyed or failed to

produce" the documents at issue and that such documents "would have been

favorable" to Plaintiff's case, (Doc. 122, at 12-14) and 2) that Defendant failed to

comply with this Court's Order of April 13, 2011, regarding Plaintiff's prior

Motion to Compel.  Each will be discussed in turn.

**A.    Spoliation**.

"'Spoliation' has been defined as 'the destruction or significant alteration of

evidence, or the failure to preserve property for another's use as evidence in

pending or reasonably foreseeable litigation.'"  ***Asher Assocs. v. Baker Hughes***

*Oilfield Operations*, No. 07-01379, 2009 WL 1328483, at *5 (D. Colo. May 12, 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2 nd Cir. 1999)).

> Thus, spoliation is both the destruction of evidence and/or the failure to preserve evidence. As such, litigants have a duty to preserve documents or materials – including electronic documents and materials – that may be relevant to ongoing and potential future litigation.

*Philips Electronics North America Corp. v. BC Technical*, 773 F.Supp.2d 1149, 1195 (D. Utah 2011).  "Such preservation may not be 'selective,' saving only the evidence supporting a theory of liability and impeding the examination of another theory." *Benton v. Dlorha, Inc.*, 06-CV-2488-KHV, 2007 WL 3231431, at *4 (D.Kan. Oct. 30, 2007).

Typically, the duty to preserve commences with the filing of a lawsuit, but the duty may arise even before a lawsuit is filed if a party has notice that future litigation is likely.  *Philips Electronics*, 773 F.Supp.2d at 1195 (citing *Asher Assocs.*, 2009 WL 1328483, at *5 and *Arista Records, LLC v. Usenet.com, Inc*., 633 F.Supp.2d 124, 139 (S.D.N.Y.2009) (holding that an employer had a duty to preserve information on its employees' computers at the start of litigation)).

A party alleging spoliation of evidence must generally establish the following elements:

> (1) that the party had an obligation to preserve the electronic evidence at the time it was destroyed; (2) that the electronic evidence was destroyed with a culpable state of mind (may include ordinary negligence, gross negligence, recklessness, willful, or intentional); and (3) the destroyed evidence was relevant and favorable to the party's claim such that a reasonable trier of fact could find it would support that claim.

**Benton**, 2007 WL at *4.

There is no doubt that Defendant had a duty to preserve the electronically stored evidence at issue, establishing the first of these elements.  As discussed above, Defendant had notice of the likelihood of future litigation when it received Plaintiff's EEOC/KHRC filing in March 2009.  Communication from both agencies discussed Defendant's duty to maintain relevant documents and information.  Even so, as discussed above, Travis Joyce's received e-mails were not maintained.  The evidence does not establish that Joyce or Defendant wilfully destroyed relevant evidence.  Defendant's description of Joyce's "misunderstanding" of the requirements of the litigation hold (Doc. 128, at 15-16, Doc. 128-14, at 30-31), however, would clearly constitute "ordinary negligence," establishing the second element.  The analysis will thus turn on the final element – whether the destroyed evidence was relevant and favorable to Plaintiff's claim such that a reasonable trier of fact could find it would support that claim.

It is undisputed that Mr. Joyce is the individual about whom Plaintiff was

complaining.  It is also undisputed that he continued to delete his email for months after Defendant received notice of Plaintiff's administrative filings – and continued to do so after this Court entered its Scheduling Order with specific instructions regarding the retention of ESI.

Given the nature of Plaintiff's complaints directed at Joyce and the fact that she worked directly with him, a reasonable trier of fact could find that his e-mail could include information regarding Plaintiff.  This is especially so considering the two year time frame from the date Defendant received notice of Plaintiff's administrative charges in March 2009 until Mr. Joyce is alleged to have finally "understood" the litigation hold in March 2011.  Further, Defendant received notice of Plaintiff's administrative charges merely a month after Plaintiff's employment was terminated.

Thus, the Court is satisfied that a reasonable trier of fact could find that the destroyed e-mail would contain information relating to Plaintiff's claims and **RECOMMENDS** that the District Court enter a finding of spoliation of evidence. The analysis therefore turns to what sanction this Court would recommend regarding such spoliation.

**B.**     **Sanctions for Spoliation**.

Courts have identified five factors to determine the correct sanction for

spoliation of evidence:

> (1) the degree of actual prejudice to the [non-culpable party]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.

*Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir.2009)

(citing *Ehrenhaus*, 965 F.2d at 920–21).

Plaintiff asks the Court to provide an inference that Defendant "destroyed or failed to produce" the documents at issue and that such documents "would have been favorable" to Plaintiff's case, that Defendant's Answer and affirmative defenses be stricken, and that she receive monetary sanctions.  (Doc. 122, at 12-14.)  The Court **RECOMMENDS** that the District Court provide the requested inference at trial.

Plaintiff's request to have Defendant's Answer and affirmative defenses stricken, however, is not supported by the evidence and arguments presented by Plaintiff.  "Dismissal is an extreme sanction which is only appropriate in cases involving willful misconduct."  *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir.1992).  As stated above, the evidence presented establishes that Defendant's actions were not wilful.  Rather, Mr. Joyce's destruction of e-mail he received was

12

the result of a misunderstanding.  Even so, the culpability of Defendant (element 3) weighs somewhat against Defendant given both the length of time Joyce continued to empty his e-mail inbox and the fact that it was defense counsel's duty to explain the litigation to hold to Joyce.

Even so, the degree of prejudice to Plaintiff is not heightened.  The evidence presented to the Court establishes that all e-mail Joyce *sent* was retained and produced to Plaintiff.  Also, all e-mail Joyce received from Defendant's other managers was maintained in the e-mail sent folders of those other managers as they are all alleged to have complied with the litigation hold.  (Doc. 128, at 16.)  Thus, the only relevant e-mail that could have been destroyed would be e-mail regarding Plaintiff's claims and allegations that Joyce received from individuals other than Defendant's other managers, but to which he did not respond.

As such, this Court does not find striking Defendant's Answer and/or affirmative defenses to be an appropriate sanction.  Rather, this Court **RECOMMENDS** that the requested inference that Defendant "destroyed or failed to produce" the documents at issue and that such documents "would have been favorable" to Plaintiff's case is a sufficient remedy.

Plaintiff has also requested monetary sanctions for her "attorney's fees and costs incurred for all work, briefing and proceedings associated with the delayed

production and spoliated ESI evidence." (Doc. 122, at 16.)  Based on the limited

findings of this order, such sanctions would be limited to a portion of the cost of

briefing.  However, because the violation was unintentional, and because the injury

was limited by the availability of other evidence, the Court finds that the

recommended remedial instruction is a sufficient remedy.  Thus the request for

monetary sanctions is denied.

**C.      Compliance with Previous Court Order**.

Plaintiff's current motion, filed six months after the hearing, contends that

Defendant "refused to search for and produce responsive electronically stored

information ("ESI") in the format required by the Court's Orders and requested by

[Plaintiff's] discovery requests." (Doc. 122, at 2.)  Plaintiff complains that the ESI

searches conducted by Defendant were conducted by "a non-certified IT consultant

[Don Dale] who blindly searched [Defendant's] computers within arbitrary

parameters imposed by [Defendant's] counsel." (*Id*.)  Plaintiff continues that the

searches were "incomplete because the IT consultant did not search external

medial, discs, flash drives, external hard drives, cookies, images or metadata."

(*Id*.)  According to Plaintiff, the "resulting searches were not forensically sound

and lack any shred of legitimacy." (*Id*.)

Defendant responds that the search techniques it used were compliant with

14

this Court's previous Order and in accordance with the technique its third-party IT

expert described to this Court during the April 2011 hearing.  (Doc. 128, at 18-20.)

Further, Defendant argues that

> [a]t no time prior to the production of the e-mails did
> Plaintiff complain about Dan Dale's prospective search
> procedures or his qualifications.  Rather, Plaintiff chose
> to lay in wait, refused to provide guidance on search
> protocols, and attempts now to use ESI production
> protocols as a tool to avoid summary judgment.

(*Id.*, at 18.)  Defendant continues that "Plaintiff's counsel was unwilling to provide

guidance as to his demands prior to the search and now complains that the search

was not performed to his expectations."  (*Id.*, at 21.)  Additionally, Defendant

contends that "[i]f Plaintiff was uncomfortable with Mr. Dale running the search,

[counsel] had every opportunity to speak up about his concern at the hearing before

Judge Gale when the parties were discussing the prospect of passing these

uninsured litigation costs to AIH."  (*Id.*, at 22.)  The Court agrees.  It does not

appear that the parties complied with the Court's direction to confer further

concerning search methodology. To the extent that failure caused an ineffective

search, Plaintiff was complicit in that failure.

The hearing on Plaintiff's motion to compel – which resulted in the ESI

search at issue – occurred on April 5, 2011.  (Doc. 91.)  The subsequent written

Order was entered by this Court on April 13, 2011.  (Doc. 100.)  Based on the

15

information available to the Court, the actual documents gleaned from Defendant's ESI search were produced in May 2011, constituting approximately 70,000 pages. (Doc. 128, at 10.)  Thereafter, Defendant contends it continued to review the documents at issue "for privilege and [to] generate a privilege log."  (*Id.*) Plaintiff's counsel was notified of defense counsel's "ongoing work" in this regard. (*Id.*; *see also* Docs. 128-8, 128-9, 128-10.)  These communications occurred in May and June 2011.  (*Id.*)  The resulting privilege log was produced to Plaintiff's counsel on August 29, 2011.  (Doc. 128.)  The present motion (Doc. 121) was not filed by Plaintiff's counsel until October 3, 2011 – 6 months after the hearing on Plaintiff's underlying motion to compel (Doc. 91), some 5 months after the ESI documents were delivered to Plaintiff's counsel in May 2011, and 35 days after the August 29, 2011, production of the privilege log at issue.

The Court thus finds Plaintiff's complaints regarding the format and substance of the production to be untimely, as are any complaints regarding Defendant's privilege log.  The underlying issue relating to these documents stems from Defendant's responses to Plaintiff's discovery requests and Defendant's compliance with this Court's Order on Plaintiff's prior motion to compel. Following the hearing and written Order on Plaintiff's motion to compel, Defendant produced the resulting discovery documents at issue to Plaintiff in May

16

2011.  Therefore, pursuant to D. Kan. Rule 37.1(b), any additional motion relating to the sufficiency of this production should have been filed within 30 days "of the default or service of the response . . . that is the subject of the motion, unless the court extends the time for filing such motion for good cause."  Plaintiff has not established good cause for waiting approximately 5 months after the document production to bring the present motion.[1]  As such, the portions of Plaintiff's motion relating to the sufficiency and substance of Defendant's document production are **DENIED.**

      **IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Finding of Spoliation and for Sanctions (Doc. 121) is **DENIED in part** as more fully set forth above.

      **IT IS THEREFORE RECOMMENDED** by the undersigned Magistrate that the District Court provide an inference at trial that Defendant destroyed or failed to produce the relevant portion of Travis Joyce's e-mail and that such documents would have been favorable to Plaintiff's case.  Pursuant to 28 U.S.C. §636(b)(1), Fed.R.Civ.P. 72, and D.Kan. Rule 72.1.4, the parties shall have fourteen (14) days after service of a copy of these proposed findings and

---

[1]  Additionally, she has offered no valid reason for waiting more than 30 days to complain about the privilege log produced on August 29, 2011.

recommendations to serve and file with the U.S. District Judge assigned to the case, any written objections to the findings of fact, conclusions of law, or recommendations of the magistrate judge.  A party's failure to file such written, specific objections within the fourteen-day period will bar appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition.

**IT IS THEREFORE ORDERED AND RECOMMENDED**.

Dated at Wichita, Kansas, on this 14th day of March, 2012.

s/ Kenneth G. Gale
KENNETH G. GALE
United States Magistrate Judge
