**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **LINDA D. HUDSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 10-cv-2287-JAR** |
| ) | |
| **AIH RECEIVABLE MANAGEMENT** ) | |
| **SERVICES,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff filed this action based on claims arising out of her employment at Defendant

AIH Receivable Management Services ("AIH") and her termination.  At trial, the jury heard

evidence on Plaintiff's only remaining claims—her retaliation and racially hostile work

environment claims—and returned a verdict for Plaintiff on her hostile work environment claim

and for Defendant AIH on the retaliation claim.

The matter currently comes before the Court on Defendant's Motion for Judgment as a

Matter of Law (Doc. 199) and Motion for a New Trial (Doc. 201).  Both motions are fully

briefed, and the Court is prepared to rule.  As explained more fully below, the Court denies both

of the motions.

## I.    Background

Plaintiff filed this action asserting claims against AIH for race discrimination,

harassment, hostile work environment and retaliation in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII"),[1] the Kansas Act Against Discrimination ("KAAD"),[2] and 42 U.S.C. § 1981; age discrimination and harassment in violation of the Age Discrimination in Employment Act ("ADEA")[3] and the KAAD; sexual harassment and hostile work environment in violation of Title VII and the KAAD; and whistle-blower retaliation in violation of Kansas law.  Defendant filed a motion for summary judgment and the Court granted the motion in part and denied it in part.[4]  The Court granted summary judgment to Defendant on Plaintiff's claims under Title VII, on Plaintiff's age discrimination claims under the ADEA and the KAAD, on Plaintiff's claim of a sexually hostile work environment under the KAAD, on Plaintiff's claims of retaliation under § 1981 and the KAAD that are not based on her termination, and on Plaintiff's claim of whistle-blower retaliation under Kansas law.  The Court denied summary judgment on Plaintiff's claim of a racially hostile work environment under § 1981 and the KAAD, and on Plaintiff's claim of retaliation based on her termination under § 1981 and the KAAD.

The matter was tried to a jury and at the close of evidence, Defendant moved for judgment as a matter of law under Fed. R. Civ. P. 50(a),[5] which the Court took under advisement.  The jury returned a verdict in favor of Plaintiff on Plaintiff's claim of hostile work environment racial harassment.[6]  The jury awarded Plaintiff compensatory damages on this claim

---

[1]42 U.S.C. § 2000e, *et seq.*

[2]K.S.A. § 44-1001, *et seq.*

[3]29 U.S.C. § 621, *et seq.*

[4]Docs. 92, 133.

[5]Doc. 180.

[6]Doc. 188.

in the amount of $50,000.[7]  The jury also awarded punitive damages against Defendant in the amount of $75,000.[8]  The jury found in favor of Defendant on Plaintiff's claim of retaliation.[9] The Court denied Defendant's motion for judgment as a matter of law.[10]  Defendant filed the instant motions, renewing its motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and requesting a new trial pursuant to Fed. R. Civ. P. 59(a).

## II.    Standards

### A.    Renewed Motion for Judgment as a Matter of Law

A court may grant a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[11]  "[A] party is entitled to judgment as a matter of law only if all of the evidence, viewed in the light most favorable to the nonmoving party, reveals no legally sufficient evidentiary basis to find for the nonmoving party."[12]  "Judgment as a matter of law 'is warranted only if the evidence points but one way and is susceptible to no reasonable inferences to support the party opposing the motion.'"[13]  The Court must consider all of the evidence in the record, construing it in the light most favorable to

---

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]Doc. 192.

[11]Fed. R. Civ. P. 50(a)(1).

[12]*Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1195 (10th Cir. 2012) (citing *Burrell v. Armijo*, 603 F.3d 825, 832 (10th Cir. 2010)).

[13]*Id.* (citing *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (citation and quotation omitted).

the jury's verdict, and keeping in mind that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[14]  If, after examining the evidence, the Court finds that the trial contained evidence upon which a jury could have properly returned a verdict against the movant, the Court must deny the motion for judgment as a matter of law.[15]

### B.     Motion for New Trial

Under Federal Rule of Civil Procedure 59(a), a court may grant a new trial on all or some of the issues on motion of a party "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[16]  Motions for new trial are committed to the sound discretion of the district court.[17]  Courts do not regard motions for new trial with favor and only grant them with great caution.[18]

"If 'a new trial motion asserts that the jury verdict is not supported by evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence.'"[19]  If a new trial motion is based on an error at trial, the court must not grant the motion unless the error prejudiced the party's substantive rights.[20]

---

[14]*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted); *see also Rocky Mountain Christian Church v. Bd. of Cnty. Commr's*, 613 F.3d 1229, 1235 (10th Cir. 2010).

[15]*See Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir. 1988).

[16]Fed. R. Civ. P. 59(a)(1)(A).

[17]*See Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1193 (10th Cir. 1997).

[18]*Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992).

[19]*M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762–63 (10th Cir. 2009) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)).

[20]*See Henning v. Union Pac. R.R.*, 530 F.3d 1206, 1216–17 (10th Cir. 2008) (citing Fed. R. Civ. P. 61).

### III.   Discussion

#### A.   Defendant's Motion for Judgment as a Matter of Law

  1.   <u>Insufficient evidentiary basis to support a hostile environment</u>

  Defendant claims that Plaintiff failed to introduce evidence that 1) racial harassment was so pervasive or severe that it altered the terms of Plaintiff's employment, and that 2) Travis Joyce's comments stemmed from racial animus.  The Court must determine whether there was evidence upon which the jury could have properly returned the verdict in favor of Plaintiff's claim of a racially hostile work environment.

  Federal cases construing Title VII have been used as persuasive authority by the Kansas courts in interpreting and applying the KAAD,[21] and the elements of a plaintiff's case are the same under § 1981 and Title VII.[22]  To establish a hostile work environment, a plaintiff must show that "under the totality of the circumstances, the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and that the harassment was based on or stemmed from his race."[23]  Plaintiff must establish that the environment would be "reasonably perceived (objectively), and is perceived (subjectively), as hostile or abusive."[24]  In addition, a plaintiff must be able to point to "more than a few isolated incidents of racial

---

  [21]*See, e.g., Labra v. Mid–Plains Constr., Inc.,* 90 P.3d 954, 957 (Kan. Ct. App. 2004); *see also Best v. State Farm Mutual Auto. Ins. Co.,* 953 F.2d 1477, 1480 n.2 (10th Cir. 1991); *Cubie v. Bryan Career Coll., Inc.,* 244 F. Supp. 2d 1191, 1200 (D. Kan. 2003).

  [22]*Drake v. City of Fort Collins,* 927 F.2d 1156, 1162 (10th Cir. 1991).

  [23]*Stewart v. Bd. of Comm's for Shawnee Cnty., Kan.,* 216 F. Supp. 2d 1265, 1278 (D. Kan. 2002) (citations omitted).

  [24]*Lewis v. Standard Motor Prods., Inc.,* 203 F. Supp. 2d 1228, 1235 n.31 (D. Kan. 2002) (citing *Nieto v. Kapoor,* 268 F.3d 1208, 1220 (10th Cir. 2001) (citations omitted)).

enmity."[25]  "Mere snubs, unjust criticisms, and discourteous conduct are not actionable; to

establish a hostile work environment, plaintiff must show that the alleged harassment is

excessive, opprobrious, and more than casual conversation."[26]  This Court has held that:

> Harassment must be sufficiently severe or pervasive, and the court
> should consider all of the circumstances, including: the frequency
> of the discriminating conduct; its severity; whether it is physically
> threatening or humiliating or a mere offensive utterance; and
> whether it unreasonably interferes with an employee's work
> performance.[27]

Defendant argues that even assuming that all the incidents Plaintiff complains about are

true, the incidents were not so severe or pervasive so as to alter the terms, conditions, or

privileges of employment.  Defendant argues that the offensive language occurred only a few

times over a seven year period.  However, Travis Joyce was hired four months before Plaintiff

was terminated, and all of the incidents occurred in this four month period.  Defendant cites

*Bolden v. PRC Inc.*,[28] as support for its argument.

The defendants in *Smith v. Northwest Financial Acceptance*,[29] also relied on *Bolden* in

contending that the evidence was insufficient to establish pervasive harassment because Plaintiff

did not produce evidence of a steady barrage of comments.[30]  The court in *Smith*, held that:

> However, Defendants' reliance on *Bolden* is misplaced because

---

[25]*Id.* (citations omitted).

[26]*Stewart*,  216 F. Supp. 2d at 1280 (citing *Garcia-Paz v. Swift Textiles, Inc.,* 873 F. Supp. 547, 561-62 (D. Kan. 1995)).

[27]*Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

[28]43 F.3d 545, 551 (10th Cir. 1994).

[29]129 F.3d 1408 (10th Cir. 1997).

[30]*Smith*, 129 F.3d at 1414.

> this case involves more than isolated incidents of sexual
> harassment.  In *Bolden*, we held that only two overtly racial
> comments and one arguably racial remark over the course of the
> plaintiff's eight years of employment did not constitute pervasive
> conduct. . . . The record reflects that in this case Plaintiff presented
> evidence of approximately six statements made by Mr. Mangus to
> her over her twenty-three month employment.[] There is also
> testimony that such sexually disparaging remarks were repeated
> frequently.  We note that while courts have tended to count events
> over time to determine pervasiveness, the word "pervasive" is not
> a counting measure.  The trier of fact utilizes a broader contextual
> analysis.  It begins with the number, sequence, and timing of the
> conduct.  The factfinder then looks at the nuances of an
> environment that is imposed by each instance of discriminatory
> behavior.[31]

The court in *Smith* also noted that the "test is a disjunctive one, requiring that the

harassing conduct be sufficiently pervasive *or* severe to alter the terms, conditions, or privileges

of Plaintiff's employment."[32]  However, the two grounds "are, to a certain degree inversely

related; a sufficiently severe episode may occur as rarely as once . . ., while a relentless pattern

of lesser harassment that extends over a long period of time also violates the statute."[33]  In

determining whether the conduct was "severe," the court considered the intimate setting of the

office, which was a relatively small, open space without partitions or walls.[34]  The court found

that this public setting only increased the humiliation, and thus the severity of the discriminatory

conduct.[35]  Furthermore, unambiguous racial epithets fall on the "more severe" end of the

---

[31]*Id.* at 1414-15 (citations omitted).

[32]*Smith*, 129 F.3d at 1413 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)).

[33]*Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (citing *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)).

[34]*Smith*, 129 F.3d at 1414.

[35]*Id.*

spectrum.[36]

Plaintiff kept a journal documenting the racially discriminatory statements made by Joyce, and testified that it was difficult to document everything because Joyce said so many things that were discriminatory.  Plaintiff testified that during her first training session after Joyce started working at AIH, he told her she was too dumb and old and that Martha was his friend and would believe anything he said.  Plaintiff testified that Joyce quoted lines from the movie *The Color Purple*.  Plaintiff testified that Joyce would stand up, look directly at her, and quote the line "I may be black, I may be ugly, but dear God I'm here," and indicate that at least he has a job—more than he can say about someone else.  Plaintiff testified that Joyce found her weak point and he knew it got to her, and he dwelled on it and continued to use it to taunt her pretty much daily.  Plaintiff testified that Ms. Booze would say to Joyce "I thought you weren't going to say anything racial today," to which Joyce would respond "I forgot we had a snitch here."  Plaintiff testified that she heard Joyce call her a "nigger bitch" twice, and quite a few times he called her old, dumb and black and too stupid to know when to quit.  Plaintiff testified that Mr. Holtgraves and Ms. Thornhill would sit in the middle of the collection floor and laugh at Joyce's comments, which was very demeaning.  She testified that Thornhill quit speaking to her and for lunch Plaintiff would sit in the stairwells or sit in her car, even in inclement weather.  Plaintiff testified that she started losing her hair and her sleep and relationship with her husband were affected.

---

[36]*See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1145 (10th Cir. 2008) (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) ("Far more than a mere offensive utterance, the word 'nigger' is pure anathema to African-Americans.  Perhaps no single act can more quickly . . . create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' . . . "); *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002) ("While there is no 'magic number' of slurs that indicate a hostile work environment, we have recognized before that an unambiguous racial epithet falls on the 'more severe' end of the spectrum.").

Ms. Booze testified that *The Color Purple* is not a comedy, it's about a black woman that is raped by her father and then forced to marry an older man that treated her badly.  Booze testified that if she had heard Joyce making racial slurs, she would find his pantomiming of "I may be old, I may be black, etc." to be offensive.  But, she testified that she did not hear any of these other alleged racial comments by Joyce.  The Court finds that there was a legally sufficient evidentiary basis for the jury to find that Plaintiff met her burden of showing a racially hostile work environment that was so severe or pervasive so as to alter the terms, conditions, or privileges of her employment.

Defendant also argues that Plaintiff produced no evidence that Joyce's comments were the product of racial animus nor that he harbored racist sentiments.  Plaintiff and former employees, Christine Blake and Leigh Dillard, testified that Travis Joyce used racial slurs and made racially offensive comments in the workplace.  They testified to frequently hearing Joyce quote movie lines from *The Color Purple*.  Plaintiff testified that Joyce caller her a "nigger" at least twice, and Blake testified that she heard Joyce call Plaintiff a "black bitch," and heard Joyce say "nigger" in the office between ten and fifteen times.  There was evidence that Joyce: announced that he was the gay KKK; referred to the South rising again; referred to those mad black slave people killing themselves on crack cocaine; quoted lines from *The Color Purple*; referred to African-Americans being "lazy asses on welfare;" and referred to throwing a nigger under the bus.  The Court finds that there was sufficient evidence of racial animus presented to the jury.

### 2. Insufficient evidentiary basis to award punitive damages

Defendant also argues that Plaintiff failed to prove by clear and convincing evidence that

Defendant acted with willful conduct, wanton conduct, fraud or malice.[37]  "Punitive damages may be assessed against a corporate employer for the acts of an employee when the challenged conduct is authorized or ratified by the corporation or by a "person expressly empowered to do so on behalf of the . . . employer."[38]  "Malice" is defined as "a state of mind characterized by an intent to do a harmful act without a reasonable justification or excuse,"[39] and "willful conduct" means an "act performed with a designed purpose or intent on the part of a person to do wrong or to cause injury to another."[40]  "An act performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the act is a wanton act."[41]  "[A]n employer can be liable for punitive damages, even if it does not know it is violating an employee's rights, 'so long as the employer appreciates the wrongfulness, harmfulness, or injuriousness of the act itself."[42]  This awareness can be inferable from the intentional discrimination evidence supporting the underlying claim.[43]

   At trial, AIH's witnesses did not present evidence that they followed their harassment policy or took actions based on the complaints, but rather AIH's defense was that no complaints were made.  Yet Plaintiff and her witnesses testified that not only did  they complain about some

---

[37]*See* Kan. Stat. Ann. § 60-3702(c).

[38]*Hysten v. Burlington N. Santa Fe Ry.* Co., 530 F.3d 1260, 1276 (10th Cir. 2008) (citations omitted); *see* Kan. Stat. Ann. § 60-3702(d)(1).

[39]*Hysten*, 530 F.3d at 1276; Doc. 187 at 23 (Instruction No. 21).

[40]*Id*.

[41]Doc. 187 at 23.

[42]*Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1200 (10th Cir. 2012) (citing *Hysten v. Burlington N. Santa Fe Ry.* Co., 530 F.3d 1260, 1277 (10th Cir. 2008)).

[43]*Hysten*, 530 F.3d at 1277 (citation omitted); *see also Harsco Corp. v. Renner*, 475 F.3d 1179, 1188 (10th Cir. 2007) (The pervasiveness of the harassment can properly lead to an inference of knowledge.).

of the racially offensive conduct, management was actually present when it occurred.  Plaintiff testified that Mr. Holtgraves and Ms. Thornhill would sit in the middle of the collection floor and laugh at Joyce's comments.  Plaintiff testified that she complained to Martha Thornhill about Joyce's racially discriminatory and inappropriate comments, but Thornhill merely laughed and told Plaintiff to "get over it or quit."  Dillard and Blake likewise testified about complaining to Thornhill and receiving the same response as Plaintiff.  There was testimony that their complaints were never noted, no interviews were conducted and there was no follow-up.  Plaintiff also complained to Toni Booze, an AIH manager, who told her to keep quiet because Joyce was "Martha's boy" and Plaintiff would be the one to get in trouble.  There was also testimony that Booze told Joyce "I thought you weren't going to say anything racial today," to which Joyce would respond "I forgot we had a snitch here."  The jury was also presented with evidence that Joyce was a "super-collector," was "Martha's boy" and was protected by Defendant.

The Court finds that Plaintiff introduced sufficient evidence to support the jury's award of punitive damages.  There was a legally sufficient evidentiary basis for the jury to find that Defendant acted in a willful, wanton and malicious manner toward Plaintiff.  Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there was sufficient evidence for the jury to conclude that Plaintiff was subjected to a racially hostile work environment and that punitive damages were warranted.  The Court cannot say that the evidence points but one way and is susceptible to no reasonable inferences supporting Plaintiff's claim.

### B.    Defendant's Motion for a New Trial

Defendant argues that it is entitled to a new trial on Plaintiff's race-based hostile work

environment claim, because "[t]he Court inverted its application of FRE 608 by permitting the Plaintiff to argue that the credibility of AIH's employees could be attacked by specific instances of prior bad conduct and refusing to provide AIH the opportunity to present opinion and reputation evidence of Mrs. Hudson's poor veracity."[44]  Specifically, Defendant argues that over its objection, Plaintiff was permitted to elicit testimony regarding Joyce's impersonation of Duval Lewis, a debtor, in his attempts to collect a debt, and was also permitted to inquire into Joyce and Thornhill's initial dishonesty to investigators regarding this incident.  Defendant argues that this evidence was not independently relevant to any issue in the lawsuit and was used to paint Joyce and Thornhill as liars.  Defendant also requests a new trial on the basis that the verdict was against the overwhelming weight of the evidence.  In the alternative, Defendant seeks remittitur.

   1.  Impeachment of Joyce and Thornhill with specific instances of prior bad acts

Defendant argues that the introduction of Joyce and Thornhill's untruthfulness was completely unrelated to Plaintiff's claims of a hostile work environment, and although the Court allowed the admission to establish pretext in terminating Plaintiff as part of Plaintiff's retaliation claim, Plaintiff did not limit its use of this evidence to establish pretext, but instead used the prior bad acts or wrongs to attack Joyce and Thornhill's credibility while they were on the witness stand.

   Rule 404(b) of the Federal Rules of Evidence provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This

---

[44]Doc. 202 at 2.

> evidence may be admissible for another purpose, such as proving
> motive, opportunity, intent, preparation, plan, knowledge, identity,
> absence of mistake, or lack of accident. . . . [45]

Plaintiff presented evidence that on January 29, 2009, Joyce called an insurance company impersonating a debtor, and told them to send him a check at AIH's address. The Court ruled that the evidence of Joyce's impersonation of a debtor was relevant to the issue of pretext, i.e., what information Defendant possessed about employees when managers decided who to downsize for the alleged reduction in force ("RIF"). The Court excluded evidence regarding the criminal investigation, but allowed evidence that the situation was brought to AIH's attention and what happened within the company—i.e. whether they investigated or took disciplinary action, because it was evidence of pretext. Both Joyce and Thornhill admitted that they lied during the investigation into the impersonation. Plaintiff used the evidence to show that Defendant's reason for terminating her was pretextual — that no reasonable employer would retain Joyce over Plaintiff, given his misconduct. Although the jury did not find for Plaintiff on her retaliation claim, this evidence was relevant to the issue of pretext. Proving pretext was an essential element of Plaintiff's retaliation claim and the probative value of this evidence outweighed the prejudicial effect against Defendant.

Defendant attempted to admit similar evidence regarding Plaintiff. Defense counsel asked Christine Blake whether Plaintiff was standing or sitting when Plaintiff called the insurance company and portrayed herself as another employee—Megan Alterman. Blake responded that she was unaware of when she did that. Following this inquiry, a bench conference was held out of the hearing of the jury. The Court emphasized that it was allowing

---

[45]Fed. R. Evid. 404(b)(1) and (2).

evidence of Joyce's misconduct because Defendant was aware of it when it made its decision to terminate Plaintiff pursuant to the alleged RIF.  Thus, it was probative of pretext.  The Court indicated that if Plaintiff did a similar act it would be relevant if AIH knew about it before it made the decision to terminate Plaintiff.  Defendant did not revisit the issue nor attempt to present a witness that could testify that AIH knew about Plaintiff's conduct before she was terminated.  This is understandable considering AIH's defense to Plaintiff's whistle blower claim was that AIH was unaware prior to Plaintiff's termination that Plaintiff was the one that called the insurance company to report Joyce.

Defendant also points to Plaintiff's counsel's closing argument and argues that Plaintiff's use of this evidence, in direct contravention of the Court's order (which permitted the use of this evidence solely as pretext evidence), entitles Defendant to a new trial.  However, Defendant did not object to Plaintiff's counsel's closing argument,[46] and the Court instructed the jury that statements, objections or arguments the lawyers make are not evidence.[47]

The Court finds that this evidence was relevant and probative of pretext.[48]  Furthermore, the probative value of this evidence is not outweighed by Rule 403 considerations.

2. Refusal to allow Defendant to present evidence of Plaintiff's poor reputation for veracity

Defendant argues that four former co-workers of Plaintiff — Shayla Williams, Ben Kind,

---

[46]*See Glenn v. Cessna Aircraft Co.*, 32 F.3d 1462, 1465 (10th Cir.1994) (holding that "[a] party who waits until the jury returns an unfavorable verdict to complain about improper comments during opening statement and closing argument is bound by that risky decision and should not be granted relief").

[47]Doc. 187 at 33 (Instruction No. 31).

[48]Defendant argues that the evidence should have been limited to establishing pretext.  The Court notes that it is not aware of Defendant proposing a limiting instruction at the jury instruction conference.

14

Darlene Prier, and Dorothy Russell — were willing to speak to Plaintiff's reputation for poor veracity, and that testimony should have been admitted, citing FRE 608(a).

Federal Rule of Evidence 608(a) states:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.  But  evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.[49]

Because Defendant's motion is based on an alleged error at trial, the Court must first determine whether it erred in excluding the evidence, and if so, the Court must then determine whether the error prejudiced Defendant's substantive rights.  Here, the Court finds no error in its decision to exclude the proffered testimony.  Even if the Court erred in excluding this testimony, a new trial based upon an erroneous evidentiary ruling is warranted only if that error prejudicially affected the substantial rights of a party.  Based on the proffers of testimony, the Court finds that even if the exclusion was erroneous, it did not prejudicially affect Defendant's substantial rights.

The Court found that the probative value of evidence that former employees had an issue with Plaintiff several years ago was outweighed by prejudice, and therefore the Court limited the focus to 2008-2009.[50]  Defendant sought to call Shayla Williams as a witness to present evidence that Plaintiff had a history of not getting along with her coworkers.  Ms. Williams had not

---

[49]Fed. R. Evid. 608(a).

[50]Defendant alleged in the Pretrial Order that Plaintiff was selected for the RIF due in part to her attitude and performance after she was moved to the medical route (January 28, 2009).  The Court allowed Defendant to rebut Plaintiff's evidence that Plaintiff was a great performer before that time period (while collecting on the financial route).  However, because Defendant did not preserve the issue of her performance and attitude before she was moved to the medical route, the Court limited the extent of this testimony.

worked at Defendant for five or six years.  The Court ruled that because Ms. Williams left the

company in 2005, and no other witness had testified regarding that time period, the evidence was

outside the relevant time frame and there was not a close enough temporal connection.  The

Court did advise Defendant that similar evidence would be permissible if it was within the

relevant time frame.  The Court did allow Defendant to make an offer of proof by questioning

Ms. Williams.  In reviewing the offer of proof, nothing in Ms. William's testimony speaks to

Plaintiff's reputation for poor veracity.  Ms. William's proffered testimony alleges that Plaintiff

had a tendency to be rude, irritable, failed to acknowledge the success of her coworkers, and

used non-racial profanity in the workplace.

Similarly, Defendant made an offer of proof by questioning Darlene Prier.  When asked if

she thought Plaintiff was an honest person, Prier replied that she used to think so, but she just

really didn't know.  When asked if she thought Plaintiff was honest or dishonest, Prier replied "I

would guess dishonest."  Finally, when asked if she would believe Plaintiff if she was testifying

under oath, Prier replied "I would like to say yes, but honestly I don't know."  Defendant also

made a proffer for two more witnesses— Dorothy Russell and Ben Kind.  Defendant proffered

that they would testify to the effect that they would not believe Plaintiff if she testified under

oath.

The Court found that this generic evidence was not particularly probative and that it

would be prejudicial to bring in coworkers to give generic opinions as to Plaintiff's honesty,

noting that the jury had already heard favorable and unfavorable things about almost every

witness in the case, and had sufficient evidence to weigh their credibility.  For example, the jury

was presented with testimony that Plaintiff hid accounts from Joyce and was untruthful in telling

Joyce that Defendant did not settle accounts and did not order credit reports.

The Court finds that, in light of the proffers of testimony and the other evidence available to the jury, even if the Court erred in excluding this testimony, a new trial is not warranted because any such error did not prejudicially affect Defendant's substantial rights.

3.  Verdict against the overwhelming weight of the evidence

Defendant claims that the verdict was against the overwhelming weight of the evidence because 1) the testimony of Plaintiff and her primary witness, Christine Blake, differed as to the number of times Joyce used a racial epithet — Plaintiff testified that Joyce used a racial epithet three times while Blake testified that he used the racial epithet at least ten times; 2) Joyce worked well with African-Americans and therefore his difficult relationship with Plaintiff was not caused by her race; and 3) a preponderance of the witnesses testified that Joyce never uttered racial epithets and three of those witnesses are African-American and would be very sensitive to such language.

Defendant's arguments are unpersuasive.  The variance in the number of times Plaintiff and Blake heard Joyce say "nigger" does not establish that the jury's verdict was overwhelmingly against the weight of the evidence.  Plaintiff may not have been present or may not have overheard each instance when Blake heard Joyce use this racial epithet.  Blake continued to work there after Plaintiff was terminated.

The fact that other African-Americans testified that they had a good working relationship with Joyce is also insufficient to show that the verdict was against the overwhelming weight of the evidence.  "[A] claimant in a hostile environment harassment case must show that the environment would be reasonably perceived (objectively), and is perceived (subjectively), as

17

hostile or abusive."[51]  The jury was instructed that in determining whether a reasonable person would find the work environment to be hostile or abusive, they

> must consider the evidence from the perspective of a reasonable person.  This is an objective standard that requires you to look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances.[52]

The jury could have concluded that certain witnesses were not credible, or that they feared for their jobs, or that they were aware that Defendant favored Joyce and failed to discipline him, or that Joyce was "protected" and "Martha's boy."  The jury could have believed their testimony that they were unaware of the racial comments, and only heard the reciting of lines from *The Color Purple*.  The jury could have interpreted Ms. Booze's testimony that she got along with Joyce in several different ways — the jury could have found her not credible, could have found that she was getting along with him in the same manner she instructed Plaintiff to because he was "Martha's boy" or possibly that Joyce treated Booze differently than Plaintiff because she was a high level manager.  The fact that some employees testified that they got along with Joyce does not prevent the jury from finding that the objective standard was met.

    The jury was instructed regarding its role in determining the weight and credit to be given to the testimony of each witness.  The jury was instructed that "[t]he testimony of a fewer number of witnesses concerning any fact may be more credible than the testimony of more witnesses to the contrary,"[53] and that:

---

[51]*Nieto v. Kapoor*, 268 F.3d 1208, 1220 (10th Cir. 2001) (citing *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 22 (1993)).

[52]Doc. 187 at 9 (Instruction No. 8).

[53]Doc. 187 at 28 (Instruction No. 26).

18

> In weighing the testimony of a witness you should consider the witness's relationship to the plaintiff or defendant; any interest the witness may have in the outcome of the case; the witness's manner while testifying; the opportunity and ability to observe or acquire knowledge concerning the facts about which the witness testified; the witness's candor, fairness and intelligence; and the extent to which the witness has been supported or contradicted by other credible evidence.  You may, in short, accept or reject the testimony of any witness in whole or in part.[54]

The Court cannot find that Defendant has proved that the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence.  Instead, the Court finds that the trial contained evidence upon which a jury could have properly returned a verdict for Plaintiff on her claim of a racially hostile work environment with damages.  Even if the Court would have reached a different decision, "[a] new trial is not warranted simply because the court would have reached a different verdict."[55]

4.  Remittitur

Defendant also argues that the Court should exercise its authority to reduce the verdict to be in line with Kansas and federal law.  "When a court concludes that there was error only in the excessive damage award, but not error tainting the finding of liability, it may order a remittitur or grant a new trial if the plaintiff refuses to accept the remittitur."[56]  "A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages."[57]

Defendant argues that it is a small, family debt collection company, is insolvent and has

---

[54]Doc. 187 at 29 (Instruction No. 27).

[55]*Crumpacker v. Kansas*, 2004 WL 3186196, *4 (D. Kan. 2004) (citing *Boyce v. Comm'r of Dickinson Cnty.*, 857 F. Supp. 794, 797 (D. Kan. 2004).

[56]*Klein v. Grynberg*, 44 F.3d 1497, 1504 (10th Cir. 1995).

[57]*Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 249 Fed. App'x. 63, 80–81 (10th Cir. 2007) (quoting *Johansen v. Combustion Eng'g*, 170 F.3d 1320, 1331 (11th Cir. 1999)).

no insurance coverage.  Defendant also argues that the Court should take into consideration that Congress and the Kansas legislature have acknowledged the excessive costs of civil rights litigation on small employers.  The Civil Rights Act of 1964 entails damages caps of $50,000 (combined punitive and compensatory) on the smallest employers.[58]  Likewise, under the KAAD, damages are capped at $2,000.[59]  Thus, Defendant argues that Federal and State law suggest that the smallest of corporations are unable to pay more than $50,000.  However, the Tenth Circuit has previously held that "[S]ection 1981 does not have a statutory cap that limits punitive damages as does Title VII."[60]  Likewise, in *Miller v. Prosoco, Inc.*,[61] a similar argument was made and the court noted that Section 1981a(b)(4) specifically states, that "[n]othing in this section shall be construed to limit the scope of relief available under section 1977 of the Revised Statutes (42 U.S.C. § 1981)," and held that "[i]t does not appear, then, that plaintiff's claim for punitive damages pursuant to section 1981 is limited to $50,000.00 as defendants so contend."[62]

Finally, Defendant argues that the evidence does not support an award of $50,000 for emotional distress.  There is no evidence that the jury's verdict was excessive or resulted from passion or prejudice.  The jury's award of $75,000 in punitive damages was one and a half times

---

[58]42 U.S.C.A. § 1981a (b)(3).

[59]K.S.A. § 44-1005(k).

[60]*Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1117 (10th Cir. 2001); *See also Bogle v. McClure*, 332 F.3d 1347, 1362 (11th Cir. 2003) ("Congress has not seen fit to impose any recovery caps in cases under § 1981(or § 1983), although it has had ample opportunity to do so since the 1991 amendments to Title VII.").

[61]No. 93–2353–JWL, 1994 WL 481759, *10 (D. Kan. Aug. 3, 1994).

[62]*Id.*; *accord West v. Boeing Company,* 851 F. Supp. 395, 399  n. 5 (D. Kan. 1994) (there are no caps on compensatory and punitive damages similar to those in Title VII in racial discrimination claims under 42 U.S.C. § 1981).

the compensatory damage award.[63]  The Court cannot find that the jury's award is so excessive

that it shocks the judicial conscience and raises an irresistible inference that passion, prejudice,

corruption, or other improper cause invaded the trial.[64]  The Court denies Defendant's request for

a new trial or remittitur.

      **IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for

Judgment as a Matter of Law (Doc. 199) is DENIED.

      **IT IS FURTHER ORDERED** that Defendant's Motion for New Trial (Doc. 201) is

DENIED.

      **IT IS SO ORDERED**.

Dated: October 29, 2012

                      S/ Julie A. Robinson
                      JULIE A. ROBINSON
                      UNITED STATES DISTRICT JUDGE

---

[63]*See Haberman v. The Hartford Ins. Group*, 443 F.3d 1257, 1271-72 (10th Cir. 2006) ($100,000 punitive damage award was not constitutionally excessive, even though that award was twenty times the $5,000 actual damage verdict); *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1116-17 (10th Cir. 2001) (1.1 million dollar punitive award which was approximately twenty times the $56,000 compensatory damage verdict was not constitutionally excessive).

[64]*See Therrein v. Target Corp.*, 617 F.3d 1242, 1257 (10th Cir. 2010).